```
1              UNITED STATES DISTRICT COURT
                  DISTRICT OF MARYLAND
2                   SOUTHERN DIVISION

3    UNITED STATES OF AMERICA      .
                                   .
4         vs.                      .  RWT-04-0235
                                   .
5    PAULETTE MARTIN, ET AL        .  GREENBELT, MARYLAND
     DEFENDANTS                    .
6                                  .  DECEMBER 6, 2004

7

8              TRANSCRIPT OF MOTIONS HEARING
            BEFORE THE HONORABLE ROGER W. TITUS,
9               UNITED STATES DISTRICT JUDGE

10

11   A P P E A R A N C E S:

12   FOR THE GOVERNMENT:        DEBORAH JOHNSTON, ESQ.
                                BONNIE GREENBERG, ESQ.
13                              ASSISTANT U.S. ATTORNEY

14   FOR THE DEFENDANT RICE:            GARY TICKNOR, ESQ.
     FOR THE DEFENDANT PAULETTE MARTIN: MICHAEL MONTEMARANO, ESQ.
15   FOR THE DEFENDANT MANGUAL:         WILLIAM BRENNAN, ESQ.
     FOR THE DEFENDANT NUNN:            RICARDO ZWAIG, ESQ.
16   FOR THE DEFENDANT GOODWIN:         ANTHONY MARTIN, ESQ.
     FOR THE DEFENDANT JOHN MARTIN:     THOMAS SAUNDERS, ESQ.
17   FOR THE DEFENDANT DOBIE:           ELITA AMATO, ESQ.
     FOR THE DEFENDANT BYRD:            BERNARD GRIMM, ESQ.
18   FOR THE DEFENDANT WHITING:         MARC HALL, ESQ.
     FOR THE DEFENDANT BYNUM:           TIMOTHY MITCHELL, ESQ.
19   FOR THE DEFENDANT SCOTT:           ROLAND WALKER, ESQ.
     FOR THE DEFENDANT BOYD:            PAUL BERGRIN, ESQ.
20   FOR THE DEFENDANT ALI-GARDNER:     HARRY McKNETT, ESQ.
     FOR THE DEFENDANT JOHNSON:         TIMOTHY SULLIVAN, ESQ.
21   FOR THE DEFENDANT BARBER:          ANTHONY RICCO, ESQ.
     FOR THE DEFENDANT HARDEN:          EDWARD SUSSMAN, ESQ.
22   FOR THE DEFENDANT FARMER:          JANE NORMAN, ESQ.
     FOR THE DEFENDANT HARRIS:          ROBERT WALDMAN, ESQ.
23   FOR THE DEFENDANT WALKER:          G. ARTHUR ROBBINS, ESQ.
     FOR THE DEFENDANT LANE:            PAUL KREAMER, ESQ.
24   FOR THE DEFENDANT BOOKER:          FREDERICK SULLIVAN, ESQ.
     FOR THE DEFENDANT PHILPOT:         IDUS DANIEL, ESQ.
25   FOR THE DEFENDANT RILEY:           WARREN GORMAN, ESQ.
     FOR THE DEFENDANT BERRY:           GLEN OWENS, ESQ.
```

```
FOR THE DEFENDANT SOLOMON:        MANUEL RETURETA, ESQ.
FOR THE DEFENDANT ARNOLD:         ALLEN ORENBERG, ESQ.
FOR THE DEFENDANT MILTON BOYD:    PETER SEMEL, ESQ.



Court Reporter:        Sharon O'Neill, RMR
                       Official Court Reporter
                       United States District Court
                       6500 Cherrywood Lane - RM 200
                       Greenbelt, Maryland 20770
                       301-344-3227
```

1          THE COURT:  Good morning.  Please be seated.

2          THE CLERK:  The matter now pending before this Court

3    is criminal docket number RWT 04-0235, United States of America

4    vs. Paulette Martin, et al.  We're here for the purpose of a

5    motions here.

6          Counsel, I need you to identify yourselves, and can

7    we begin with the attorney who is present for the proceeding by

8    phone.  Mr. Ticknor.

9          MR. TICKNOR:  Yes.  Your Honor, this is Gary Ticknor.

10   I represent Kimberly Rice.  I will be on the cell phone as part

11   of this hearing until 9:45, when I have to depart and go to a

12   trial in front of Judge Legg.  Mr. Michael Montemarano will

13   then be taking over for me, and with the permission of my

14   client, for the purposes of this motion and for the arraignment

15   thereafter.

16         In case we don't get to it before I have to depart, I

17   am scheduled, according to the Government's schematic, to be in

18   the third trial, which is 12 weeks in length, and the earliest

19   that I could be available for that twelve week trial would be

20   July of 2005.  With that, I'll go on to the next person.

21         MS. JOHNSTON:  Good morning, Your Honor.  Deborah

22   Johnston and Bonnie Greenberg on behalf of the Government.

23   Seated with us at counsel table is case agent Thomas Eveler.

24         THE COURT:  Good morning.

25         MR. MONTEMARANO:  Good morning, Your Honor.  Michael

Montemanaro on behalf of defendant Paulette Martin, who sits

behind me, and I'll be standing in later for Mr. Ticknor.

MR. FISCHER:  Your Honor, David Fischer on behalf of

Ms. Levi, Gwendolyn Levi.  She's standing behind, or sitting

behind me.

MR. BRENNAN:  Good morning, Your Honor.  William

Brennan on behalf of Mr. Luis Mangual.  Mr. Mangual is seated

behind me.

THE COURT:  Good morning.

MR. ZWAIG:  Good morning, Your Honor.  Ricardo Zwaig

on behalf of Mr. Larry Nunn, who is seated behind me.

THE COURT:  Good morning.

MR. MARTIN:  Good morning, Your Honor.  Anthony

Martin on behalf of Learley Goodwin, who is present in the

courtroom.

THE COURT:  Good morning.

MR. SAUNDERS:  Good morning, Your Honor.  Thomas

Saunders on behalf of John Martin, Jr., who is seated behind

me.

THE COURT:  Good morning.

MS. AMATO:  Good morning, Your Honor.  Elita Amato on

behalf of Lavon Dobie, who is also present behind me.

THE COURT:  Good morning.

MR. GRIMM:  Your Honor, good morning.  Bernard Grimm

on behalf of Eugene Byrd.  And in the interest of time,

1   Mr. Byrd filed no motions for today's proceedings, so I would

2   ask the Court to be excused, although Mr. Byrd would want to

3   remain for the proceedings and Mr. Idus Daniel, seated as juror

4   number three, or number three in the jury box, has agreed to

5   stand in, and Mr. Sussman has agreed to stand in for the

6   arraignment, which would take place subsequent to this matter.

7           THE COURT:  Well, I didn't want you to leave yet,

8   because there is a matter that I want to address before --

9           MR. GRIMM:  No.  Given the box seat that I was given

10  for this proceeding, I would want to stay and get my money's

11  worth for as long as I can, Your Honor.

12          THE COURT:  All right.  Thank you.

13          MR. HALL:  Good morning, Your Honor.  Marc Hall and I

14  represent Reece Whiting, who is seated behind me.

15          THE COURT:  Good morning.

16          MR. MITCHELL:  Your Honor, good morning.  Timothy

17  Mitchell.  I represent Derrek Bynum, who is seated behind me.

18          THE COURT:  Good morning.  Front row.

19          MR. WALKER:  Good morning, Your Honor.  My name is

20  Roland Walker.  I represent Craig Scott, who is present here in

21  court this morning.

22          THE COURT:  Good morning.

23          MR. BERGRIN:  Your Honor, good morning.  I'm Paul

24  Bergrin.  I represent Mr. Boyd, who is sitting next to me.

25          THE COURT:  Good morning.

1          MR. McKNETT:  Good morning, Your Honor.  Harry

2     McKnett, representing Ms. Lanora Ali-Gardner, who is sitting to

3     my left.

4          THE COURT:  Good morning.

5          MR. SULLIVAN:  Good morning, Judge.  Tim Sullivan on

6     behalf of Donna Johnson, who is present.

7          THE COURT:  Good morning.

8          MR. RICCO:  Yes.  Good morning, Your Honor.  My name

9     is Anthony Ricco.  With the permission of the Court, I'm

10    substituting for Paul Brenner.  I'm representing Ed Barber, who

11    is seated right to my left.

12         THE COURT:  Good morning.

13         MR. SUSSMAN:  Good morning, Your Honor.  My name is

14    Ed Sussman.  I represent Ruby Harden.  Ms. Harden, I've spoken

15    to her.  She had some car problems.  She's on the way.  Also,

16    with leave of the Court, I'm standing in for Jane Norman, who's

17    client is Mr. Farmer.  I have not seen him this morning.

18         THE COURT:  Good morning.

19         MR. WALDMAN:  Good morning.  Robert Waldman on behalf

20    of George Harris, who's present.

21         THE COURT:  Good morning.

22         MR. ROBBINS:  Good morning, Your Honor.  G. Arthur

23    Robbins, on behalf of Milburn Walker, who is present.

24         THE COURT:  Good morning.  Any other counsel in that

25    part or the courtroom?  Okay.  Let's go to the jury box.

1          MR. KREAMER:  Paul Kreamer on behalf of Mr. Larry

2     Lane.

3          THE COURT:  Good morning.

4          MR. SULLIVAN:  Good morning, Your Honor.  My name is

5     Frederick Sullivan, and I represent Claude Booker, who is

6     seated behind me.  I'm going to be leaving.  I'm in the middle

7     of a trial, and I'll have to leave shortly, but Mr. Retureta

8     has graciously consented to stand in for me for all the

9     proceedings today.

10         THE COURT:  All right.  Thank you.

11         MR. DANIEL:  Good morning, Your Honor. Idus Daniel.

12    I'm counsel for Mr. Philpot.  He's seated behind me, Your

13    Honor.

14         THE COURT: Good morning.

15         MR. GORMAN:  Warren Gorman for Travel Riley.

16         THE COURT:  Good morning.

17         MR. OWENS:  Good morning, Your Honor.  Glen Owens,

18    Law Office of Jack D. Rubin, on behalf of Donnell Berry, seated

19    behind me.

20         THE COURT:  Good morning.

21         MR. RETURETA:  Good morning, Your Honor.  Manuel

22    Retureta on behalf of Mr. Solomon, also seated behind me.

23         THE COURT:  Good morning.

24         MR. ORENBERG:  Good morning, Your Honor.  Allen

25    Orenberg on behalf of Mr. Claude Arnold, who is present.

1          THE COURT:  Good morning.  Are there any counsel who

2    have not identified themselves?  Okay.

3          Ladies and gentlemen, a couple of preliminary things.

4    I spent the whole week-end in bed and so I have a flu and I

5    don't feel good, so I'm going to try to be as efficient as I

6    can with you today.

7          Please remember, in light of the large number of

8    people here today, that you really should not try to speak

9    unless you go to a microphone and make certain you identify

10   yourself and your client when you go to the microphone.

11         If there is more than one person who wants to speak,

12   make sure I point to you and I want to hear from you next as

13   opposed to someone else.

14         We were last together earlier this Autumn, on

15   September 13th.  Following that proceeding, I issued an Order

16   that set up the process that we're beginning today, with the

17   hearing of the proposals for severance, and I want to hear that

18   first.  But I have a number of other things to deal with today

19   of an administrative matter that we will need to resolve before

20   you all can leave.

21         As you all know, there will be arraignments conducted

22   by Judge Day at the conclusion of this proceeding with respect

23   to the latest superseding indictment in this case.  Also, if

24   you have not met Mr. Sullivan, he is acting as coordinator on

25   behalf of the defense counsel for the flow of information, and

1    my understanding is that there have been 38 CDs that have been

2    distributed, and I believe 32 are audio and six are documents.

3    And any retained counsel who has not participated in this

4    should make certain you see Mr. Sullivan.

5            Mr. Sullivan, will you stand up just so everybody can

6    see you.  So he's your man for coordinating discovery documents

7    in this case.

8            I would also talk to Donna Shearer, and she reminded

9    me that she needs to have budgets from all defense counsel by

10   the end of this month, so take care of that so that you can get

11   paid.

12           Ms. Johnston, is there any update on the status of

13   the two unserved defendants in this case?

14           MS. JOHNSTON:  No, Your Honor.  They are still

15   fugitives.

16           THE COURT:  Okay.

17           MS. JOHNSTON:  We did not seal the last third

18   superseding indictment as to those individuals, so their

19   identity is known.

20           THE COURT:  Okay.  An additional attorney just

21   entered the courtroom.  Could you please identify yourself and

22   your client.

23           MR. SEMEL:  My name is Peter Semel, Your Honor, and I

24   represent Milton Boyd.  Co-counsel is Paul Bergrin.

25           THE CLERK:  Whenever you speak, you're going to have

1    to come up to the podium.

2            THE COURT:  You didn't hear me say a few minutes ago,

3    because you weren't here, you don't get to speak unless you

4    speak into a mic, because we're not going to get your name or

5    anything else if you don't.

6            MR. SEMEL:  Peter Semel, S E M E L, co-counsel with

7    Paul Bergrin, representing Milton Boyd.

8            THE COURT:  Thank you.  Welcome.  Now, we have got on

9    the phone Mr. Ticknor, and because he has to go into a case,

10   he's in trial in Baltimore Federal Court, I want to be able to

11   hear from him rather early in this.

12           What I intend to do is to hear from the Government

13   with regard to its severance proposal, and then hear from all

14   attorneys who have either responded to it or filed their own

15   Motion to Sever.  But before we start, let me just tell you

16   that I have some preliminary musings I'll give you so you can

17   chew on these when you argue as to where you think I should

18   ultimately come out.  I have not made any final decision.

19           I can tell you this; I do not believe it's going to

20   be possible for me to make a final decision with respect to

21   severance in this case until we've gotten considerably further

22   along the road in disposing of the number of pending motions,

23   and motions that I want to remind you are due on or before

24   December 20, and I really don't think it's going to be possible

25   to determine the shape of this table until after those motions

have been disposed of. But I can give you some preliminary

indication, that in looking at this indictment, the last two

counts, 76 and 77, I think it is, seem to me to arguably be a

separate conspiracy that perhaps might be appropriate for

severance, either because it shouldn't have been joined or

because it would be appropriate to sever.

And I'm going to want to hear from the Government

what its position would be with respect to the possible

severance of those two counts and the four defendants that are

involved in those two counts. And it seems to me that that

might be an ideal candidate for the first group to get severed,

if there were going to be a severance, and to be tried early.

The second thought I have is that, looking at the

Government's severance proposal, its first grouping, whether it

ends up, whether I conclude that that's an appropriate grouping

or not, it seems to me that it might be appropriate, subject to

whatever the outcome of these pending motions may be, and

future motions, to pencil that case in for trial, so that we at

least have potentially two matters put on the calendar so we

can start moving our way through and disposing of all these

cases.

So, those are some thoughts that I have and I want to

make certain that Mr. Ticknor heard that, because this might

mean he goes to trial a lot faster than he thought, because he

represents one of the people in the last two counts. And, Mr.

Ticknor, I hope you have your calendar with you, because I'll be talking about that case.

So, those are some of my thoughts after looking through the Government's severance proposal.

The other thought I had is, the Government says it doesn't see any problem for the Government or the defendants in trying this case all together, and I don't agree. If you want to have more proceedings like this one, with no room for a jury, try to try this case in this courtroom. This is the biggest courtroom in this courthouse, and just to get this group together, it's approximately 90 people without jurors, so it's physically impossible to do it, I think.

And I think also that the ability of 12 thoughtful jurors to remember and sort out this many people in one single case, I think would be rather difficult. So I'm strongly inclined to break this case up. Whether it's along the lines that the Government has proposed or not is another matter, so I wanted to put that on the table so you could argue to that kind of preliminary thinking. Mr. Montemarano.

MR. MONTEMARANO: Thank you, Your Honor. Michael Montemarano on behalf of Paulette Martin. So I'm clear, when you're speaking of the severance of counts 76 and 77, you're speaking of the severance of those counts and the trial on those counts, as opposed to any particular defendants. In other words, my client, who is charged in 76 and 77, along with

1   numerous other counts --

2          THE COURT:  Right.  I'm talking about severance of

3   those counts and all the defendants charged in those counts --

4          MR. MONTEMARANO:  -- will be two trials.  Thank you.

5          THE COURT:  -- as a separate trial.

6          MR. MONTEMARANO:  Thank you, Your Honor.  Just want

7   to be clear.

8          THE COURT:  And I was fairly disposed to at least

9   pencil in the Government's first grouping for trial.  So, with

10  that, I will hear from Ms. Johnston.  My voice will stay with

11  me until this is over, but --

12         MS. JOHNSTON:  Your Honor, and I will not talk too

13  long, because we have filed extensive pleadings here.

14         THE COURT:  I'll be drinking water and sucking on

15  cough drops.

16         MS. JOHNSTON:  We won't be able to talk very long,

17  beause none of us have water, because there were not enough

18  water pitchers, we've been told by the courtroom deputy.

19         Your Honor, recognizing the number of defendants in

20  this case, as the Court ordered the Government to do, we came

21  up with a severance plan to accommodate concerns about security

22  and the number of defendants.  Obviously, we could never try

23  all of these individuals together, nor would we want a jury to

24  have to consider them all together at one time.

25         And in that regard we filed with the Court, I believe

on October 29th, the Government's proposed severance plan.
Defendants were to file their objections by November 12th.
Since that time, as recently as Friday, we've gotten additional
objections.  But what's interesting to note about the
objections that have been filed with the Court, no one has
objected to the way the Government has broken down the three
groups.

THE COURT:  You haven't heard from me yet, but that's
all right.

MS. JOHNSTON:  No, we haven't heard from the Court,
and perhaps your voice is most important.  But in terms of the
defendants, none of them have objected that we placed some
defendants with the wrong defendants.

We have, indeed, broken it down into three different
groups.  The first group is the Levi group, and I had planed to
go through each group, indicating who had objected in that
group, and in what regard, and we've done that in our reply to
the defendants' objections to our plan, and no one has
proffered another objection.

In terms of the Levi group, the only individual, and
we have them listed here, Larry Nunn, Craig Scott, William
Turner, Tony Solomon, Gwendolyn Levi and Donna Johnson.  The
only one who's objected to being included that in group has
been Tony Solomon, through counsel, and his objection is that
he wants to be tried alone.  He thinks that his role in the

conspiracy is significantly different from the other

individuals in that portion of the conspiracy, and that

therefore he would be prejudice by a joint trial.

As the Court well knows, in this Circuit when people

are joined together in a conspiracy, it is assumed that they

will be tried together unless there are some extraordinary

circumstances.

THE COURT REPORTER: I'm sorry. I can't hear you.

MS. JOHNSTON: In this instance Mr. Solomon's role in

the conspiracy is very similar to that of Mr. Nunn and

Mr. Scott. Those were individuals obtaining quantities of

heroin from Ms. Levi which they then subsequently were

delivering to other users or distributors, street level

distributors of heroin.

So, it would be our position that Mr. Solomon is

properly included in the conspiracy, is properly joined with

these individuals to go to trial, as there is no indication

that there is anything in terms of the evidence that could not

be addressed through jury instructions.

In the second group, which I'll cover very quickly,

Group Two is the Luis Mangual group. Again, in that group

there are eight individuals, one of whom is still a fugitive.

Two individiuals, Travel Riley and Milton Boyd, have filed

objections. Mr. Boyd's objection came in after our response

was due to the reply, so we did not address that directly.

But, again, these individuals were all connected with Luis Mangual, Jr. They obtained cocaine from him. Travel Riley is an individual who was obtaining significant quantities of cocaine from Luis Mangual.

He, along with a couple of the other co-defendants, met Luis Mangual, Jr. while they were all incarcerated in the same federal prison. Shortly after they got released they began dealing the cocaine.

Mr. Boyd's role is a little different in that Mr. Boyd was involved in supplying the cocaine to Mr. Mangual that then got distributed. Again, individuals with different roles, all involved in the same conspiracy, which would be to distribute the cocain here in the Washington metropolitan area.

Again, we believe that any disparity in the evidence could be addressed through the Court's jury instructions. It is not unusual for the jury to have to assess people with different roles in the conspiracy. And, indeed, given the number of individuals involved in this conspiracy, there is no reason to believe why they could not all be joined together.

We then get to the third group, which right now has 15 individuals listed. I would indicate to the Court that there are active plea negotiations with individuals in that group. I fully expect to have any number of those individuals plead guilty, based on our conversations with their attorneys, but because we have not --

1    THE COURT: Well, that's one reason, Ms. Johnston,

2 why I didn't want to try to set or make any final decisions on

3 the severance until we figure out how many players we've got,

4 because I can tell you right now, we're not going to try a 15

5 defendant case.

6    MS. JOHNSTON: And the Government does not -- the

7 Government does not intend to do that, Your Honor. It is our

8 firm belief that a number of these individuals, at least one is

9 currently a fugitive, and there are three who we expect to have

10 plea agreements from before the end of the week.

11    There are several others who have requested pleas

12 from us, so we fully expect that that group will shrink

13 substantially in size and be more in line with the other two,

14 where you have somewhere between five and seven defendants,

15 five and eight defendants going to trial.

16    And in regards to that group, again, no one, with the

17 exception of George Harris, the other individuals, John Martin,

18 Jr., Derrek Bynum, who Friday filed a motion basically to join

19 Mr. Martin's motion, Ruby Harden, Lavon Dobie and Claude

20 Arnold. Those individuals have filed an objection to our

21 severance plan on the basis that they don't want to be tried

22 with the insurance fraud count.

23    Other than that, those individuals have not objected

24 to the way we have set up that group. So their objection is

25 purely that they will be prejudice if they're tried along with

1    the insurance fraud.

2              THE COURT:  Well, doesn't that go away if I sever the

3    insurance fraud?

4              MS. JOHNSTON:  That would go away if the Court

5    severed the insurance fraud.  The one defendant, George Harris,

6    is objecting to being tried with anyone in the group, or only

7    wants to be tried only with Paulette Martin.

8              Again, in his motion he argues that he's just a user

9    of cocaine.  He is charged with being a member of the

10   conspiracy and of using the telephone in furtherance of that

11   conspiracy.  He has the same role as many of the other

12   individuals in terms of obtaining drugs for subsequent

13   redistribute from Ms. Martin, so we believe he is properly

14   joined.

15             If I could now turn to the question I think that the

16   Court's most interested in.  It is interesting to note that the

17   people charged in the insurance fraud, Kimberly Rice, Richard

18   Gunn is no longer on our list, but Kimberly Rice, Lanora Ali

19   and Paulette Martin, have not filed motions to have those

20   counts severed.

21             Those individuals have not requested the Court to

22   sever their trials from the codefendants.  They had ample

23   opportunity to do that, have not done that.  So it's the drug

24   defendants, the other people with the astericks here, who are

25   asking the Court to sever the insurance fraud counts.

1      THE COURT:  That doesn't mean there's not a basis for

2 severing it though, does it?

3      MS. JOHNSTON:  What?

4      THE COURT:  The mere fact that the insurance

5 defendants have not said "Let me out of here," does not mean

6 that there is not a basis for the severance.

7      MS. JOHNSTON:  I think the Court can always exercise

8 its discretion as well, especially --

9      THE COURT:  Well, that's the direction I'm going in,

10 is to take that insurance case all by itself and try it.

11      MS. JOHNSTON:  The concern the Government would have

12 with that is, quite frankly, if for some reason those

13 defendants charged in both the drug conspiracy and the

14 insurance fraud conspiracy would object to having a separate

15 trial.  They have not moved for a severance of those counts.

16      I don't believe that the drug defendants have

17 established that they would be prejudice by the insurance

18 fraud.  Quite frankly, the drug charges are more serious.  They

19 involve possession of firearms in some instances and moving

20 large, significant quantities of drugs.

21      In terms of the insurance fraud, I think the Court

22 should be aware of the fact that there will be another

23 superseding indictment, particularly in relation to those

24 insurance fraud charges.  There will be additional counts of

25 mail fraud, wire fraud and, in all likelihood, money laundering

1    having to do with those charges.  In addition --

2            THE COURT:  Well, are you going to change the nature

3    of the conspiracies alleged?  Because as I read the indictment

4    now, it looks like the big conspiracy is Count one, and that

5    involves distribution of various types of drugs which have

6    sub-conspiracies, or whatever you want to call it, but at least

7    one major conspiracy for distribution of drugs and one

8    conspiracy on insurance fraud, and they presently are not

9    alleged, although your papers seem to connect them, as being

10   part of an overall insurance and drug conspiracy.  Looks like

11   two conspiracies.

12           MS. JOHNSTON:  I believe there that will be some

13   overlapping evidence in terms of the source of the moneys used

14   to facilitate the insurance fraud, that a good bit of that

15   money came from Ms. Martin's drug proceeds.

16           I do not -- I anticipate that the charges that we

17   will add will be insurance, mail and wire fraud counts and

18   money laundering counts.  The money laundering counts may

19   relate only to the insurance fraud, so that the Court could

20   sever those charges out.

21           But I wanted the Court to be aware, and defense

22   counsel to be aware, that in regards to the insurance fraud

23   there will be additional charges filed that relate to that

24   insurance fraud.  We have in that instance had to obtain

25   probably close to a hundred insurance policies from different

companies, and have had to go out and interview a lot of those individuals who had no knowledge of their roles as insured in those policies.  So there will be additional charges there and including potentially money laundering charges as relate to the insurance fraud, and that the indictment will probably be returned within the next four to six weeks.

THE COURT:  Okay.  Ms. Johnston, you may not be able to answer this right now, but perhaps you could confer with Ms. Greenberg.  How long would it take to try the insurance fraud case?

MS. JOHNSTON:  Court's indulgence.  Your Honor, I believe that would probably take, I would say, given who the defendants are in that case, probably three weeks, maybe four weeks.  But another thing is, Your Honor, that case, as the Court well knows, the insurance fraud, sentences are much lower than the sentences that at least two of those defendants, Ms. Ali and Ms. Martin, are facing in the drug conspiracy case.  So there would always be a possibility that if they were to go to trial first on the drug conspiracy, they may not -- ultimately they may decide to plead to the insurance fraud because it won't have a significant impact on their sentencing.

So, at least as to two of the current defendants in the insurance fraud, and there may be -- Court's indulgence. There may be two of the drug defendants also added to the insurance fraud when we supersede that.  So, in terms of the

insurance fraud, you have presently three defendants charged,
Ms. Ali, Paulette Martin and Kimberly Rice.

In addition to that, there are two other codefendants
who may be added to the insurance fraud, all who are in the
Paulette Martin group now.  So, it may make sense to charge
those, to try those defendants who are charged in that drug
conspiracy first, because given the kinds of sentence they're
facing in terms of the drug conspiracy, we may reach a
disposition as to them.  Although the same cannot be said for
Kimberly Rice, because right now she's only charged in the
insurance fraud, and I don't believe that she'll be added to
the drug conspiracy at this point.

THE COURT:  Okay.  Let me hear from Mr. Ticknor.  Do
you have anything to say with respect to the Government's
severance proposal, Mr. Ticknor?

MR. TICKNOR:  Your Honor, the reason we didn't object
to it is that it's my belief that if you're a very small cog in
a very large conspiracy, if we're somebody that's going to take
up one day's worth of testimony out of 12 weeks, it increases
my chances, the chances of my client being found not guilty.
As far as I'm concern, if they sever it out, we can try it as a
separate matter also.

THE COURT:  Okay.  Well, I will make a decision later
in this hearing about whether we're going to set a hearing on
that -- a trial of that or not.  Now, let me hear from anybody

1    else who has to leave early or has a problem timing wise.

2              You have to state your name and who you represent.

3         MR. GRIMM:  Bernie Grimm on behalf of Eugene Byrd,

4    Your Honor.  I don't have a dog in this fight.  I did not file

5    a motion.  Mr. Daniel has agreed to sit in for me.  Mr. Byrd,

6    my client, has agreed to have Mr. Daniel sit in for him, even

7    though he has not filed a motion in this proceeding.

8         THE COURT:  Okay.

9         MR. GRIMM:  And Mr. Sussman has agreed to remain if

10   Mr. Byrd is included in the superseding indictment, which

11   arraignment is scheduled for later on this morning.

12        THE COURT:  Okay.Mr. Montemarano.

13        MR. GRIMM:  Your Honor, I hope you feel better.

14        MR. MONTEMARANO:  Michael Montemarano on behalf of

15   Paulette Martin.  To the extent that Your Honor is considering

16   even making a decision on the possibility of severing out the

17   insurance fraud counts, counts 76 and 77, I'm in no position at

18   this point to address it one way or the other.

19             Certainly, the notion of it had occurred to me as I

20   begin to review both the indictment and the discovery, but I am

21   nowhere near the place I would need to be to speak sensibly to

22   such a notion.  Unfortunately, every bit of discovery in this

23   case applies to my client.  Literally, my client appears in

24   half of the documentary evidence.  The two primary telephone

25   lines, the cell phone and the land line, were my client's

phones. I've got much bigger fish to fry and I've been more focused on those, number one.

And, secondly, I don't know that in terms of it being a much shorter trial, it's a shorter trial from the defense's point of view in terms of the amount of paperwork that we're going to have to deal with. Ms. Johnston's already discussed the possibility of a hundred separate insurance policies that would have to be reviewed, that would have to be produced to the defense, et cetera.

I don't see how this Court can undertake to schedule in a trial or to make a decision on that severance at this point. And even if it were to be severed, I'm not sure how it could be tried in advance of the narcotics trial, in all candor. And inasmuch as everybody charged, I believe everybody charged in the insurance fraud who's also charged in part of the narcotics conspiracy is detained, I don't see that moving one earlier does anything in terms of the speedy trial aspects of the case.

I mean, I know Ms. Rice at this point is only charged in the insurance fraud, but she is not yet detained. So that's where this matter stands with regard to speedy trial, in my view.

THE COURT: All right. I have got in front of me a list of those who have either responded to the Government's severance proposal or have filed their own motion, and what I'm

1    going to do is go down the list.

2              So, the first one I have is Mr. Waldman for Mr.

3    Harris.  I'll be glad to hear you.

4              MR. WALDMAN:  Your Honor, I would like to submit on

5    the motion as filed.  I think that the arguments in it are

6    cogent and I think that they should be compelling, and I would

7    like to submit on that.  I don't have anything more to add or

8    wish to take up any more time.

9              THE COURT:  Thank you.  Mr. Gorman for Mr. Riley.

10             MR. GORMAN:  Your Honor, on the severance motion, my

11   client is charged in the conspiracy.  It seems to me that from

12   the paper discovery that I received, his only contact is with

13   Luis Mangual, and the only -- their evidence is based upon

14   alleged coded conversations he had with Mr. Mangual.

15             It's also my understanding that no significant

16   amount -- no drugs were recovered from him, and it would seem

17   to me that he would not be able to get a fair trial if he's

18   tried with the other people in the conspiracy.  There is no

19   evidence that I know of that he knows any of them.  The only

20   person that he knows is Mr. Mangual and trying him with the

21   other people, he would not be able to have a fair trial.

22             I would ask that he either be tried by himself or be

23   tried with Mr. Mangual, since he has no contact with the other

24   people.  That's the basis of my argument.  Does the Court want

25   me to address the other motion that I filed?

1          THE COURT:  Sure.

2          MR. GORMAN:  There was a motion to get swabs from

3    him.

4          THE COURT:  No, not that motion.  No.  We'll deal

5    with that later.  The next one I have is Mr. Retureta for Mr.

6    Solomon.

7          MR. RETURETA:  Thank you, Your Honor.  Good morning.

8    We would submit also on our motion as we have filed.  We would

9    just take note also, that as the Court considers how to

10   separate these defendants, one of the factors which I mentioned

11   is the security issue.  Just as prejudicial as it is for a jury

12   to watch these numbers of defendants with counsel in court is

13   the effect of having security in a courtroom for a large number

14   of defendants has on a jury in terms of their fear for what is

15   happening.  That spills over.  That's part of the reason why I

16   requested that Mr. Solomon be tried separately or at the most

17   with Ms. Levi, who is the only connection that he has in the

18   case.

19         THE COURT:  Thank you.

20         MR. RETURETA:  And if I may, Your Honor.  There is

21   one other outstanding motion with Mr. Solomon, which is a bond

22   modification motion, which I would ask for just a further, a

23   date in the near future.

24         THE COURT:  That will be referred to the Magistrate

25   Judge.

1      MR. RETURETA:  Very well.

2      THE COURT:  The next defendant is Mr. Martin,

3  represented by Mr. Saunders.

4      MR. SAUNDERS:  Yes, Your Honor.  For the record,

5  Thomas Saunders on behalf of John Martin.  Your Honor, I'll not

6  reiterate what is in a rather lengthy memo that I gave to the

7  Court, but I will correct one misperception which the

8  Government has, and I want the Court to realize, is at the end

9  of the motion and memorandum, it was only the last perhaps

10  three paragraphs, my client did move for a severance from all

11  other defendants.  It wasn't extensively briefed, but I want to

12  correct the record that he has in fact moved both for severance

13  from insurance frauds and severance out of the conspiracy for a

14  separate trial.

15      Turning to the issue of the severance of the

16  insurance, it's set out in my memorandum rather extensively but

17  I'd like to reference the issue of prejudice, which the

18  Government brought up today, saying there is no prejudice to my

19  defendant should they be tried together.  I think it would be

20  error to look at that, because I did some further reading, and

21  in my memo I cited *Whitehead*, a Fourth Circuit case.  And, of

22  course, Your Honor is probably more than aware from reading the

23  memo that the Fourth Circuit in both *Whitehead* and *Caplan* has

24  said that 8(b) is the controlling language in terms of joinder

25  of defendants.  And but *Whitehead* references *Ingram*, which I

1    did not cite, 272 F2d 567.

2         Those two cases seem to argue that reversal is

3    mandatory when a joinder of this type occurs.  In reading the

4    *Sidel* case, which is reference in a footnote, that is the

5    *Caplan* case was reversed on the issue of prejudice.  There was

6    an en banc proceeding afterwards, and it reversed the issue of

7    8(b), but the *Sidel* case goes on to talk about, you know,

8    prejudice, and whether or not you use a harmless error

9    analysis.

10        And I think that's very compelling, because in the

11   *Sidel* case, Your Honor, I would refer you to two sections, one

12   is at page 1012, the other at 1014 to 15.  And in both of those

13   at *Sidel*, what the Court does is it distinguishes the *Caplan*

14   case, and says that you can use the harmless error analysis

15   there, but reaffirms the statements in *Ingram* and *Whitehead*

16   that it is reversable error per se without showing a prejudice

17   when you join two conspiracies or two sets of charges that do

18   not fit 8(b).  You no longer -- you do not have to do that.

19        *Caplan* was distinguishable in that, you recall it was

20   a bombing case in which it was a conspiracy to bomb and in

21   order to investigate that the Government came in and convinced

22   one of the players in that to make a bomb for the agent, and

23   those two charges were combined.  They found those were

24   distinguishable in terms of prejudice because of the extensive

25   overlap in the nature of the evidence.

1          In this we don't.  Insurance fraud is one situation
2    and the drug conspiracy another.  So, I would leave it at that,
3    but I wanted to emphasis --
4          THE COURT:  Let me ask you this.  You've heard Ms.
5    Johnston indicate that to the extent that, my musings about
6    separating out the insurance case are appropriate, it would be
7    better for it to be the caboose rather than the engine.  What
8    is your view about that?
9          MR. SAUNDERS:  Your Honor --
10          THE COURT:  Do you care which order it is in?
11          MR. SAUNDERS:  Well, my client is not charged in the
12    insurance fraud, so it don't really matter to him, to be quite
13    candid.
14          THE COURT:  Well, it would delay your client.
15          MR. SAUNDERS:  Excuse me, Your Honor?
16          THE COURT:  If the other case went first, it would
17    be --
18          MR. SAUNDERS:  My client's moved for speedy trial, so
19    he wants to go as soon as possible.
20          THE COURT:  Understood.
21          MR. SAUNDERS:  Yes, Your Honor.
22          THE COURT:  But I can only try one case at a time.
23          MR. SAUNDERS:  Well, in that instance, he clearly
24    would like to be the engine, not the caboose.
25          THE COURT:  All right.

1    MR. SAUNDERS:  Thank you.

2    THE COURT:  The next attorney I have who's filed

3 something is Mr. Orenberg on behalf of Claude Arnold.

4    MR. ORENBERG:  Thank you, Your Honor.  Your Honor, we

5 move to join and adopt Mr. Martin, Jr.'s motion for severance

6 and we will submit.

7    THE COURT: All right.  Thank you.  The next one I

8 have is Ms. Amato on behalf of Lavon Dobie.

9    MS. AMATO:  Your Honor, we also move to join in John

10 Martin, Jr.'s motion as it pertains to the severance of the

11 insurance counts from the conspiracy.  But, Your Honor, also

12 having spoken to my client today, Ms. Dobie would also request

13 a severance from all the defendants in this case.

14    Clearly, I haven't reviewed all the discovery in this

15 matter, but that which I reviewed to date, clearly I would be

16 marking arguments as to her role as being de minimis compared

17 to those of the others.

18    There were no drugs found in her residence, although

19 there was drug paraphernalia, it's my understanding that she

20 made a representation to Pretrial Services that she was just a

21 user.  And, again, based on the weight of the evidence that I

22 believe the Government is going to put forth against the other

23 defendants in this case, she would be clearly prejudice, as her

24 role would be very minor.

25    THE COURT:  All right.  Thank you.  The next I have

1    is Mr. Sussman on behalf of Ruby Harden.

2         MR. SUSSMAN:  Your Honor, just briefly, we also move

3    for severance of the insurance counts.  I think that the only

4    thing that I would add is the discovery seems to reveal that

5    this wasn't just some paper fraud, that there were lives that

6    were insured and the people who took out these bogus policies

7    didn't necessarily wait for good or bad to happen.

8         There is some allegation that they played some role,

9    so this is a case of potential violence which I think should be

10   factored into the Court's severance equation.

11        THE COURT:  All right.  Thank you.  All right.

12   That's the list of attorneys that I have that have filed

13   something, either in opposition to the Government's proposal or

14   their own proposal.

15        Does any other counsel for defendant wish to be heard

16   with respect to the issue of severance?

17        MR. MITCHELL:  Your Honor, good morning.  Timothy

18   Mitchell.  We also filed a motion to join in John Martin's

19   motion for severance, and we'll adopt the arguments that his

20   counsel made.

21        THE COURT:  Anyone else?

22        MR. DANIEL:  Your Honor, on behalf of Mr. Philpot, we

23   would join in that motion as well.

24        THE COURT:  All right.  Ms. Johnston.

25        MS. JOHNSTON:  Your Honor, I don't know that I have

much to add to what we said initially.  Some of the allegations

here where defendants have requested that they be severed and

has their own trial is an argument that's raised by every

defendant in a conspiracy case.  They don't want to go to trial

together.

In this case we've divided the groups into cohesive

groups where the evidence be can introduced as to those groups

only.  Clearly, it's the Court's, appears to be the Court's

intent to move the insurance fraud to a separate trial.  I

would indicate, as I did initially, that there will be

evidence, we anticipate some evidence of the source of those

funds being the drug proceeds, so there is that extent of an

overlap.

And I think all counsel who have raised an issue with

that, at least Ms. Martin's attorney has concurred that that

insurance fraud should be tried subsequent to the drug

conspiracy, so we would ask if the Court does sever them, that

the Court try the drug conspiracy charge first, based on Mr.

Montemarano's proffer, and also based upon the notion that very

often, when someone has severed charges, when the more serious

charges are tried first, the less serious charges often result

in a disposition, so that might actually save some court time

down the road.

THE COURT:  Okay.  Let me say this; I am persuaded by

what Ms. Johnston has said, that it would not be appropriate at

this time to pencil in a trial date for the insurance counts,
because of her announced intention to have a superseding
indictment and possibly expand the number of defendants, and I
think that that conspiracy aspect of the case needs to settle
down to where it's going to ultimately be for trial before I
can set it.

          And I believe also that it might be more efficient to
have that tried at a later date, after the larger drug
conspiracy portions of this case are heard.

          As I indicated when I came on the bench, I'm not
prepared to make a final resolution of this severance proposal
or the severance motions.  I remain strongly inclined to have
the insurance fraud case tried separately.  Whether it's before
or after, I'm inclined to have that separated, but that's
without prejudice to what may be in some future superseding
indictment that does a greater connection to show that it's
based on another subconspiracy as opposed to being a separate
conspiracy.  So I'm not going to take any action on that.

          I do think, though, that the Government's severance
proposal with respect to the first group, the Levi group, is
appropriate, at least for preliminarily setting it down for a
trial date.  But I am only indicating that this is a tentative
conclusion that I have reached, because I really agree with
Mr. Montemarano that a lot of this case needs to get shaken
down some more before we can figure out what goes to trial and

1    when.  But I do think that the proceedings, at least pencil in

2    the Levi group for trial, would be prudent.

3            Now, I'm going to talk to you at length about the

4    other motions that are out there that are pending and the ones

5    to be filed, but it looks like we're going to have a busy

6    spring going through a large number of motions, and I want to

7    leave enough time to fairly do that, and then start setting

8    some trials.

9            So, what I would like to do now is to at least have a

10   tentative trial date for the Levi group, or the first group

11   that's in here, as proposed by the Government and that means I

12   need to talk to you about some time six weeks long that will

13   work.  So, the attorneys in the Levi group, listen carefully.

14           My trial schedule for next year is kind of

15   complicated, and I'm trying to find when I have a six week

16   block of time.  By the way, do the defense attorneys in that

17   case agree or disagree with the Government's estimate of six

18   weeks, six to eight weeks?  We've had exploding trial lengths

19   here recently that have caused some difficulty with us as a

20   scheduling matter, and I think that once I set a trial date at

21   length, I'm going to be reasonably firm on the length of the

22   trial being what the attorneys estimated rather then allowing

23   it to just go on and on and on.

24           MR. TICKNOR:  Your Honor, I don't mean to interrupt

25   you, but this is Gary Ticknor on the line.  If the Court is not

1    going to be setting the insurance fraud trial date at this

2    time, could I be excused from the remainder of the hearing and

3    have Mr. Montemarano stand in for my client?

4             THE COURT:  Yes, you may.  Say hello to Judge Legg

5    for me.

6             MR. TICKNOR:  Thank you, sir.

7             THE COURT:  Thank you.  How about September 27th for

8    group one?

9             MS. JOHNSTON:  I will be in a death penalty case that

10   starts on September 6th, scheduled to go ten weeks.

11            THE COURT:  I knew this was not going to be easy.

12            MS. JOHNSTON:  So November 14th would be the --

13            THE COURT:  November 14th.

14            MS. JOHNSTON:  The tenth week ends on the week of

15   November 7th.

16            THE COURT:  Well --

17            MR. SULLIVAN:  Your Honor, Tim Sullivan for Ms.

18   Johnson.  And this is one of the good times I'm glad I'm as far

19   away from you as I can be.  Your Honor, I start a death penalty

20   case with Judge Garbis beginning on July 6, 2005, through

21   September of 2005, followed up by a Lexington Terrace II case

22   in front of Judge Blake, which is still pending authorization

23   at DOJ, which begins September 26, 2005 through December of

24   2005.  And if you want to know what the Attorney General has

25   authorized in January, 2006, I can tell you.  Before July is

1    when I could do it.

2              THE COURT:  Before July of 2006?

3              MR. SULLIVAN:  No, July 2005.

4              THE COURT:  Oh.  Okay.  So when do you begin this

5    series of?

6              MR. SULLIVAN:  I begin picking a jury with Judge

7    Garbis on July 6, 2005.  Judge Garbis has that case ending on

8    September 19, 2005.  Then, whether it's death or not, it's

9    still a 924J, still a murder trail in front of Judge Blake,

10   that begins September 26th through December 19th.

11             THE COURT:  So you pretty well wiped out the second

12   half of 2005, right?

13             MR. SULLIVAN:  That's correct.

14             MR. RETURETA:  Pardon me, Your Honor.  Manuel

15   Retureta on behalf of Mr. Solomon.  I do not have a conflict

16   with the Court's suggested date for that group, but, if I may

17   suggest, group two, the Mangual group, there really has not

18   been a reason given by the Government why group one should go

19   first, as opposed to group two, and if there is the possibility

20   that group one is going to be pushed back to the end of 2005,

21   if I may suggest the possibility of group two proceeding before

22   us.

23             THE COURT:  Well, the problem with group two, it has

24   eight defendants and in the absence of some pleas or premature

25   deaths, that's a pretty large group in and of itself, but --

1          MS. JOHNSTON:  I would note that one of them is still

2     a fugitive, Mr. Mangual, Sr.  Of course, he could, of course,

3     show up in time to be prepared to go to trial.

4          That group, we believe we could try in the same

5     amount of time, six to eight weeks.  We decided to go with the

6     Levi group first because that case is fairly concise, a little

7     bit easier to put on and thought that would be a good group to

8     start with, because we're relatively --

9          THE COURT:  Well, your estimate of both of them is

10    the same, though, isn't it?

11         MS. JOHNSTON:  Our estimate is the same.  The first

12    group has six.

13         THE COURT:  Six is better than eight.

14         MS. JOHNSTON:  Better than eight.  Although, I will

15    tell the Court I think there was a trial in this court maybe

16    almost ten years ago that involved eight defendants in this

17    courtroom, so.

18         THE COURT:  Notice how long ago it was.

19         MS. JOHNSTON:  They have done eight without any major

20    problems.  But my intention, or the Government's intention is

21    really to try to get it down to six in both of those first two

22    groups.  The last group, as I indicated, I think will work

23    itself down.  How far, I don't know yet.  But either one of

24    those groups.  I would indicate to the Court that in terms of

25    my calendar, I could try to fit in a six week trial starting

1    April, starting April 26th.

2            THE COURT:  Of next year?

3            MS. JOHNSTON:  Of 2005.  I don't know how that works

4    with the lawyers in either of those first two groups, but we're

5    amenable to trying either one of those groups.

6            THE COURT:  Well, unfortunately, your office has

7    already got me tied up in a case on April 26th for a six day

8    trial, followed by another six day trial.  Doesn't look good.

9            MS. JOHNSTON:  Are those individuals defendants, Your

10   Honor, in those cases?

11           THE COURT:  I believe so.  If you want to go back to

12   your office and take a look at what they are, but one is U.S.

13   vs. Duncan, 04-370.  And another one is, which doesn't start on

14   the 26th, it's continued on the 26th, it's U.S. vs. Mary

15   Laciny, 04-204.  I think that's a three week trial.

16           MS. JOHNSTON:  What was the name on that.

17           THE COURT:  Laciny, L A C I N Y.  Unless that case

18   pleads out or something, because it's a three week case.  And,

19   but I potentially could fit something in there if that case

20   goes away.  That's the only question.

21           MS. GREENBERG:  Would you like me to go see what I

22   can find out while we're sitting here.

23           THE COURT:  Sure.  See if you can ask your office if

24   that case is for real or not.  It's a three week block buster

25   in the middle of my calendar.

1    MR. ZWAIG:  Your Honor, if I may.

2    THE COURT:  Yes.

3    MR. ZWAIG:  I'm sorry.  Ricardo Zwaig, on behalf of

4   Mr. Nunn.  Your Honor, on April 11th I have a scheduled murder

5   trial in Howard County, Maryland.  That case I think will take

6   as much as two weeks.

7        The other problem that I have is that I have promised

8   my children a vacation, and that promise has been standing for

9   a long time now and I would hate to break that.  That would be

10  during spring break at the end of April, beginning of May.

11   THE COURT:  I'll see what I can do.

12   MR. ZWAIG:  Thank you, Your Honor.

13   (Off the record bench conference.)

14   MS. JOHNSTON:  Your Honor, perhaps we could check on

15  that November date.  Although it doesn't work for Mr. Sullivan

16  in the Levi group, perhaps that November starting date works

17  for the Mangual group.

18   THE COURT:  What was the November date again that you

19  had, that I had, November 15th, wasn't it?

20   MS. JOHNSTON:  I think the Court had a date the end

21  of October and I advised the Court that --

22   THE COURT:  November 15th.

23   MS. JOHNSTON:  Would be the earliest I could do it,

24  because I do have ten weeks through, with the death penalty

25  case, through the week of November 7th.  As long as Judge

1    Messitte keeps that case on track, I could start this one the

2    next week.

3              THE COURT:  His track record this year has not been

4    good.

5              MS. JOHNSTON:  Perhaps starting November 22nd,

6    although that is the beginning of Thanksgiving week, but if we

7    could block off six weeks then, if all the Mangual attorneys

8    are available then we could maybe --

9              THE COURT:  Is the 15th all right with you?

10             MS. JOHNSTON:  My only concern would be if that death

11   penalty case ran over a little bit.  I didn't want to have --

12             THE COURT:  It might just slow down the start of this

13   case.

14             MS. JOHNSTON:  That would be fine.

15             THE COURT:  How about counsel for the defendants in

16   group two.  Anybody passing out about November 15th?  And we're

17   putting down six weeks or eight weeks.

18             MS. JOHNSTON:  I've estimated six to eight weeks.

19             THE COURT:  Well, we're going to have more

20   conferences together about this case, and the closer we get to

21   trial the uglier I'm going to get about being firm on

22   estimates, but I can put it on the calendar for an eight week

23   trial beginning November 15th.

24             MS. JOHNSTON:  I think, unless we have a defendant

25   who's going to put on a week's worth of testimony in their

1   defense, that we are closer to the six.  I think the six weeks

2   is fairly a good time estimate, so long as I don't have a

3   defendant who's going to put on a whole week of a defense case.

4   We usually allow for maybe a day or two of a defense case

5   because that's usually all it ends up being.

6            THE COURT:  Counsel.

7            MR. RICCO:  Your Honor, Anthony Ricco for Ed Barber.

8   I have a capital case starting in the Eastern District of

9   Pennsylvania the first week in January.  If this case goes one

10  week over it will put that case in havoc.  That case is in

11  front of Judge Joiner.  And Mr. Sullivan neglected to mention

12  that he's also co-counsel in this case.

13           MR. SULLIVAN:  It wasn't neglect.

14           MR. RICCO:  Judge, I'm just afraid with a capital

15  case, that's cutting it very awfully close.  We're talking

16  about prep time.  Cutting it very close.

17           THE COURT:  Will, I'm trying to avoid going into

18  2006, so --

19           MR. RICCO:  Judge, it just seems to me that the

20  longer the severance issue is out, the more difficult it is to

21  set a trial date with this many defendants.

22           THE COURT:  Well, I know what's going to happen if I

23  say we're not going to sever this case at all, and see what

24  happens with your calendars.  We'll be in 2007.  So I've got to

25  slice and dice this case some time, but I can't do the final

1  slicing today, but I'd like to at least get one case on the

2  calendar.

3          How long is the capital case in Pennsylvania?

4          MR. SULLIVAN:  Judge, Tim Sullivan on behalf of Donna

5  Johnson.  I think it's eight weeks, so, January, February, into

6  March of 2006.

7          MS. JOHNSTON:  Your Honor, I think I've indicated to

8  the Court, we're going to be starting this case as soon as I

9  finish the death penalty case, so --

10         THE COURT:  Well, the problem is starting a case on

11  November 15th, you promptly bump into Christmas holidays, which

12  makes it difficult to try a case between Christmas and New

13  Years, so a six week case is going to easily push into January.

14  So the question is -- what's the date that the Pennsylvania

15  case starts, Mr. Sullivan?

16         MR. SULLLIVAN:  January 6th, Your Honor.  Your Honor,

17  the other thing too, just for prudence sake, is that, you know,

18  Ms. Johnson is now defendant number 30 of 30 defendants.  If

19  the group one, and the Court is being hampered and we're

20  putting trial dates way off because of my schedule, I'm

21  appointed.  I can certainly go back to Ms. Shearer and I think

22  Ms. Johnson and I can work this out and get new counsel

23  appointed for Ms. Johnson this early, and that new counsel

24  would be appointed with the condition that he or she could meet

25  the Court's trial schedule, take me out of the equation and

1    then group one may not have a problem whenever, and then

2    Mr. Ricco's problem would be moot.  I think that's a practical

3    solution.

4         THE COURT:  It would be easier to do group one.

5    November 15th works for me.  So, if we can have a substitution

6    of counsel that would work, that's fine.

7         MR. SULLIVAN:  I hate to lose my role as discovery

8    counsel --

9         THE COURT:  We'll miss you with your coordinating

10   role.

11        MR. SULLIVAN:  I'll be happy to give that up too,

12   Your Honor.  I'll deal with Ms. Johnson and Ms. Shearer and

13   we'll get new counsel appointed, if the Court wants to keep in

14   that group one in November.

15        THE COURT:  November 15th is okay with Ms. Johnston?

16        MS. JOHNSTON:  Provided that we're not going over on

17   the death penalty case, I think it should be fine.

18        MR. MONTEMARANO:  Talking about group one?

19        MS. JOHNSTON:  Group one.  Group one is the Levi

20   group.

21        THE COURT:  You can be seated.  Not your problem.

22        MS. JOHNSTON:  That's why I have the chart here.

23        THE COURT:  Group one, then.  Wait until we hear what

24   Ms. Greenberg has to say.

25        MS. GREENBERG:  Your Honor, Mr. Park has that case.

It's scheduled for a three week trial in large part because of the complicated Blakely issues, but I think we're all expecting that <u>Blakely</u> will be decided before.

THE COURT: Let's hope so.

MS. GREENBERG: Mr. Park has no objection to this being moved. It's a one defendant tax case and she is not in custody. We tried to reach Mr. Trainor, the attorney for Ms. Laciny and were unable to reach him both at his office and cell phone. Mr. Park will come over if he hears from Mr. Trainer.

THE COURT: Well, something tells me it's going to be safer to go with November 15th and do group one and we'll -- because I know I'm going to have to have some more hearings on some of these motions.

So, let's put group one down as a, I'll compromise, make it a seven week trial, beginning November 15, and we will revisit and finalize severance, beause I'm not granting the severance proposals now. I'm going to just tentatively indicate that I'm favorably disposed to the severing out of this first group for a seven week trial November 15, and we will, as we get together again on motions and so forth, address the setting of trial in the other cases, or the other groupings.

Now, let me review with you what I believe are the pending motions out there. The Government has filed a motion with respect to six defendants, Paulette Martin, Learley Reed

1   Goodwin, Larry Donnell Nunn, Lavon Dobie, Larry Delano Lane and

2   Travel Alvin Riley, for an oral swab for DNA comparison.  I

3   have an opposition filed by Mr. Montemarano on behalf of

4   Paulette Martin.  I have an opposition by Ms. Amato on behalf

5   of Ms. Dobie, and I also have an opposition on behalf of

6   Mr. Riley from Mr. Gorman.

7           I do not have oppositions, unless they have come in

8   recently, from Learley Goodwin, Larry Donnell Nunn or Larry

9   Delano Lane.  If that's not correct, let me know.

10          Now, on those motions, I would like to act on that

11  motion, but I do not want to do so without hearing from counsel

12  for the defendants who have not yet responded.  What I would

13  like to do is to get a response promptly on those motions, and

14  is there any problem with any of the attorneys for those who

15  have not yet responded to those motion, responding by

16  December 13, a week from today?

17          MR. MARTIN:  Your Honor, for the record, Anthony

18  Martin on behalf of Learley Reed Goodwin.  We will file a

19  written opposition.  I had two trials scheduled in November

20  that delayed me, but for the record I'll join in Mr. Michael

21  Montemarano's motion for the time being.

22          THE COURT:  In his opposition?

23          MR. MARTIN:  If he has filed an opposition, I join in

24  that --

25          THE COURT:  Yes, he had.

MR. MARTIN: And I believe that he has.

THE COURT: Okay. All right. Well, all other counsel, please, you can file just a piece of paper that joins his opposition, if you wish, but I need to have the position of all the defense attorneys on that, and I'll request that that be filed by December 13th, and all of the attorneys that I have mentioned are here, right. I think they're all here.

I also have a Government motion for a handwriting exemplar from Paulette Martin, and I do not have an opposition. Is that correct, Mr. Montemarano?

MR. MONTEMARANO: You will have it in the next couple days, Your Honor.

THE COURT: Well, do December 13th on that as well, if you would.

MR. MONTEMARANO: Not a problem.

MR.ZWAIG: Your Honor, if I may. Mr. Nunn informs me that he does wish to also join in that motion.

THE COURT: Okay. Just file a joinder, if you would.

MR. ZWAIG: Will do, Your Honor.

THE COURT: Just so I have a piece of paper that has your response.

I have a pretrial defense motion filed by Mr. Martin for Mr. Goodwin, and I believe I'm going to refer that to a magistrate judge. That's a request to review it, is that right?

1          MR. MARTIN:  That's correct, Your Honor.

2          MR. SAUNDERS:  Yes, Your Honor.

3          THE COURT:  Well, if it's a review, I'll refer it to

4    a magistrate judge for consideration.

5          I have also a demand for particulars, a motion for

6    bill of particulars.  Is the Government going to respond to

7    that?

8          MS. JOHNSTON:  Your Honor, was that filed by

9    Mr. Goodwin?

10         THE COURT:  Yes.

11         MS. JOHNSTON:  Yes.  I believe that we filed, I think

12   that was filed many months ago, and we filed a request to

13   respond to his motion for a bill of particulars in our

14   consolidated response to all the defendants' pretrial motions.

15         THE COURT:  It's in there.  Okay.

16         MS. JOHNSTON:  Yes.  And I think Mr. Martin's agreed

17   that that's what we agreed upon.

18         THE COURT:  I assume you oppose it.

19         MS. JOHNSTON:  Absolutely, Your Honor.  But I expect

20   that we will have many more requests similar to that, so we

21   will file one consolidated response to the defendants' motions,

22   and I believe our consolidated response to their motions is due

23   about January 20th.

24         THE COURT:  And I have also from Mr. Martin a motion

25   for discovery and production of documents.  Have you responded

1    to that?

2             MS. JOHNSTON:  I will.  I was planning to respond in

3    the same manner in that motions response.  We have given him

4    some discovery as he's asked us for it.  His attorney has --

5    his client has refused to allow Mr. Martin to sign our

6    discovery agreement, so he sent me a letter as recently as

7    Friday, I believe, asking to set up a date where he can review

8    the evidence seized from his client's residence.  We'll make

9    that available to him.  So we are coordinating the discovery

10   with him.

11            THE COURT:  Okay.

12            MS. JOHNSTON:  And we'll file a response along with

13   our motion to respond.

14            THE COURT:  And I have a pretrial defense motion by

15   Mr. Saunders on behalf of Mr. Martin.  Is that just asking for

16   review of the magistrate judge?

17            MR. SAUNDERS:  Your Honor, for the record, Thomas

18   Saunders.  That's asking for a review.  Ms. Greenberg's office

19   contacted me in reference to ordering the transcript and I

20   agreed we would wait until they could obtain the transcript so

21   they could respond and we'd set the hearing.

22            THE COURT:  Before a magistrate judge?

23            MR. SAUNDERS:  Yes, Your Honor.

24            THE COURT:  Okay.  I have also a request for speedy

25   trial by Mr. Saunders on behalf of Mr. Martin.  I'll come back

to that.  I also have the same motion filed by Ms. Amato on behalf of Lavon Dobie.  I have a demand for speedy trial, a motion to dismiss for lack of speedy trail from Mr. Gorman on behalf of Travel Riley.  And I do not have an opposition filed on those.

MS. JOHNSTON:  Your Honor, I believe if it's just a demand for a speedy trial, we don't file a response to that because they're just asking the Court to make sure they get a speedy trial.

THE COURT:  Well, I'll tell you what I'm going to do. I'm going to ask that the Government prepare and submit to me an order, to the extent that these are motions, to deny them and to provide for an order excluding time because of the obvious complexity of this case in an earlier trial.  It would be prejudicial, highly prejudicial to the defendants, especially to force this to an early trial in any manner other than slicing and dicing it as may be fair to all parties to have a manageable trial where jurors can understand what's going on.

To me, there is no question that the Speedy Trial Act would exclude all this time, so please submit an order to me that denies these motions or requests and excludes time.

MS. JOHNSTON:  We will certainly do that, Your Honor.

THE COURT:  Now, I also have —— Is the motion to dismiss from Ms. Amato for Lavon Dobie based on speedy trial or

1  something else?  I haven't got it right in front of me.

2          MS. JOHNSTON:  I believe Ms. Dobie filed a pro se

3  motion to dismiss --

4          THE COURT:  Oh.  Okay.  All right.

5          MS. JOHNSTON:  -- that we filed a response to.

6          THE COURT:  I'm going to enter an order.  I'll deny

7  that.  All right.  And Mr. Kreamer has filed a motion for

8  Mr. Lane, reviewing detention order.  I'm make sure that gets

9  referred to a magistrate judge.

10          And I also have a motion to modify conditions of

11  release for Mr. Ticknor for Kimberly Rice, but he's gone.  Is

12  the Government going to respond to that?

13          MS. GREENBERG:  Your Honor, if we haven't already

14  done so, we will.

15          THE COURT:  Okay.  I think you need to do so and I'l

16  refer that to a magistrate.

17          MR. MONTEMARANO:  Your Honor, with regard to that

18  one, Ms. Rice is on pretrial release, so Your Honor is clear.

19  So it's not a question of --

20          THE COURT:  It's modified conditions of release.

21          MR. MONTEMARANO:  Right.

22          THE COURT:  Right.  I'll refer that to a magistrate.

23          MR. MONTEMARANO:  I'll ask Mr. Ticknor to contact Ms.

24  Johnston with regard to scheduling.

25          THE COURT:  Now, we've got some outstanding motions

now, and we already have a schedule in effect for the filing of

any remaining motions.  Counsel should please understand that I

really do mean all remaining motions need to be filed by

December 20th.  Yes.

MR. MONTEMARANO:  Would the Court perhaps consider,

in light of the fact that our first trial will not be for

about, if my math serves, about 50 weeks, perhaps we could

extend that date by about a few months?

THE COURT:  No.  Because I want to be able to grind

through these motions in the spring and summer and get them

done.  I don't know how many motions I'm going to get.  So, no.

I really mean it, December 20 is the date.

Now, obviously, if there is some brand new matter,

unforeseeable, you didn't know about, that comes up after

December 20 and you convince me that there is some good reason

why it wasn't able to be filed before then, that's fine, but I

really do want to get, in order for me to get my arms around

this case and get decisions made about severing it and when

these trials gets set and before the trial calendar gets

completely out of our hands, I need to get all the motions that

I'm going to get by a date certain, and that's December 20.

I want to make an intelligent and fair decision on

how to sever this case, and I really don't see how I can do it

in any final manner unless I really get through and resolve,

for the most part, any pending pretrial motions, and also allow

1    the normal course of events with any pleas that might take

2    place to settle out, before I make a final determination, so I

3    won't postpone the December 20 date. Counsel. You have to

4    state your name.

5              MR. RETURETA: Manuel Retureta on behalf of Mr.

6    Solomon. If I may take that invitation to try and indicate

7    something new that has come up. The Government indicated that

8    there would be a superseding indictment the beginning of

9    January. While that may not affect Mr. Solomon, given the fact

10   that it seems to be involved with the insurance and money

11   laundering, I would request, not so much as a few extra months,

12   by perhaps just delaying the motions date until January.

13             Right now we have December, January and February as

14   motions response and replies. If we could just push that back

15   one month and have those motions due in January and the

16   responses due in February and the replies late February, that

17   may be helpful for counsel.

18             THE COURT: Ms. Johnston?

19             MS. JOHNSTON: Your Honor, it has always been my

20   philosophy and Ms. Greenberg's philosophy, as well as most

21   people in our office when dealing with multiple defendant

22   cases, if they need some additional time to file their motions,

23   we don't usually object, so long as we have likewise their

24   consideration. I know now we're going to move this back a

25   couple weeks. I and Ms. Greenberg may be in trial during that

next 30 days when we're supposed to be preparing our responses.
So we've usually been very flexible with defense counsel.

I do object, I think the Court has, you know, in
terms of just putting them off for several months, but given
the holidays, if the Court wanted to use the Government's due
date, which I think is January.

THE COURT: January 21.

MS. JOHNSTON: If the Court wants to use that as the
due date for their motions response, Government doesn't have
any objection to that. I would, however, ask that if the Court
is going to do that, that we have until March 1st to file our
responses, because I'm going to be away during February, so I'm
going to lose a week there, as well as possibly being in trial.

THE COURT: Well, I was trying to avoid being the
Grinch that stole Christmas by making everybody file their
motions before Christmas and then they can go home and relax.
And now if I move this several weeks, these people are going to
have to explain to their families why they're working during
the Christmas and holiday break doing motions, but --

MS. JOHNSTON: I don't think these attorneys will be
working a lot. I don't think it will substantially ruin their
Christmas vacation. It may ruin their Christmas shopping if
they have to file, or holiday shopping, if they have to file
their responses by December 20th, but I don't think that would
necessarily affect the Court's calendar. I would ask the Court

1    to schedule some motions hearing dates --

2            THE COURT:  Oh, we're going to do that.

3            MS. JOHNSTON:  -- before calendars get full.  And,

4    more importantly, in terms of the DNA and the handwriting, we

5    would ask the Court to rule on those motions as soon as

6    possible.

7            THE COURT:  I intend to rule on those very promptly.

8            MS. JOHNSTON:  Thank you, Your Honor.

9            MS. AMATO:  Your Honor, excuse me.  Before we get too

10   far involved in this aspect I just -- Elita Amato on behalf of

11   Lavon Dobie.  I wanted to put on the record that we had filed

12   on behalf of Ms. Dobie a renewed bond motion and when the Court

13   was going through the motions that were pending, Your Honor did

14   not indicate that, so I wanted to make sure that that is known

15   to the Court.

16           THE COURT:  She has a bond motion too?

17           MS. AMATO:  Yes, and it's a renewed bond motion.

18           THE COURT:  I will refer that to a magistrate judge.

19           MR. MARTIN:  Ditto.  Anthony Martin on behalf of

20   Learley Goodwin.  Ditto for Learley Goodwin, Your Honor.  And I

21   think the Government's already responded to our second motion.

22           MS. AMATO:  Right.  And the Government --

23           THE COURT:  Yes.  I already mentioned that I've got

24   you covered on that.

25           MS. AMATO:  Right.  The Government has likewise

responded to our motion and we filed a reply, so we are

prepared to go forward.

MS. GREENBERG:  Your Honor, while we're on bond, I

did pull Ms. Rice's request.  It was for modifying conditions

of release to go on vacation, so I can consult with Mr. Ticknor

and try and get that scheduled before the magistrate judge.

THE COURT:  That's fine.

MS. GREENBERG:  It was Judge Connelly who initially

let her out and Mr. Ticknor had noted our objection in his

motion.

THE COURT:  Okay.  All right.  Well, how about if I

let the deadline slide until January 21.  Everybody like that

better?  That's the deadline for all remaining pretrial

motions.  All of them.  Other than something that relates to

something that happens after January 21, which I can't foresee

what it would be, because you will have superseded by then, Ms.

Johnston?

MS. JOHNSTON:  Oh, absolutely, Your Honor.  That will

be done either late this month or in early January.  I have to

bring back the Special Grand Jury.

THE COURT:  And you said you wanted to have, if that

deadline is March, I mean January 21.

MS. JOHNSTON:  At least March 7th would be better,

because Ms. Greenberg's advised me she's going to be in trial

in February.  I'm going to be away for a week in February.

1          THE COURT:  Does the Government plan to be the mover

2   of any motions?

3          MS. JOHNSTON:  Not usually, Your Honor.  Probably

4   will file request for defense to give us notice of any alibi.

5          THE COURT:  Okay.

6          MS. JOHNSTON:  And that we usually do it by letter.

7          THE COURT:  I'll have the oppositions, which

8   presumably are going to all be yours, by March 7.

9          MS. JOHNSTON:  Thank you, Your Honor.

10          THE COURT:  And any replies, any reason why we can't

11   do that in two weeks, March 21?  Okay.

12          Now, with respect to the outstanding motions that I

13   have now, I've got one on DNA and one on handwriting exemplars,

14   correct, from the Government?  And I've requested that I get

15   oppositions that have not yet been filed by next Monday.

16          Any reason why we can't set that for a hearing and

17   get that out of the way pretty quickly?  I don't want to do

18   this in 2006.  I want to get this done quickly.

19          MS. JOHNSTON:  Your Honor, we would like, if

20   possible, the week of December 20th.

21          THE COURT:  December 20th?

22          MS. JOHNSTON:  Yes.

23          THE COURT:  You want to have a hearing the week of

24   December 20th.

25          MS. JOHNSTON:  Yes, Your Honor.  Because

1    handwriting -- In fact, in this case the handwriting exemplars,

2    there are literally, you know, hundreds of documents that were

3    signed in the insurance fraud scheme that have to be compared

4    with Ms. Martin's writing.  The longer we take --

5                THE COURT:  Well, I do not contemplate that this is

6    going to be a long hearing.

7                MS. JOHNSTON:  I wouldn't think so either, Your

8    Honor, for either.

9                THE COURT:  All right.  You've got a hearing.

10               MR. MONTEMARANO:  Generally speaking, at this point

11   I'm not inclined to oppose the handwriting exemplar request, as

12   long as the Court is clear that the defense is not going to be

13   conceding that it's acceptable evidence under Daubert and all

14   the rest, but just the taking of the exemplars.

15               THE COURT:  Well, if you don't oppose taking the

16   exemplars, I'll enter an order today granting the motion.

17               MR. MONTEMARANO:  I'd like to speak to my client

18   further, but we might not need a hearing.  I don't think

19   there's going to be a problem.

20               THE COURT:  I mean, that's without prejudice to your

21   right to complain about admissibility at trial of any evidence

22   that may be produced from it.

23               MR. MONTEMARANO:  If I could have another couple

24   days, I can probably concede on the issue, or at least concede

25   on the need for a hearing.

1            THE COURT:  How about the DNA swab?

2            MR. MONTEMARANO:  Now, that's a completely different

3    matter.

4            THE COURT:  Somehow I figured it would be.  All

5    right.  How about December 21.

6            MR. MONTEMARANO:  I'm not available on the 21st, Your

7    Honor.

8            THE COURT:  Not available on the 21st.

9            MR. MONTEMARANO:  I can't be available until the 23rd

10   of that week.

11           THE COURT:  The 23rd?

12           MR. MONTEMARANO:  Yes, sir.

13           THE COURT:  We're getting close to shut down time.

14   Are you available the 20th.

15           MR. MONTEMARANO:  No.  My week gets better as it goes

16   on.  It starts really bad on the 20th --

17           THE COURT:  It gets real good on December 25th?

18           MR. MONTEMARANO:  Your Honor, do you know a good

19   divorce attorney?  Actually, I'll be available the afternoon of

20   the 22nd.

21           THE COURT:  Afternoon of the 22nd?

22           MS. JOHNSTON:  Your Honor, we're not --

23           MR. ZWAIG:  The 22nd, Your Honor?

24           THE COURT:  The 22nd of December.

25           MR. ZWAIG:  I have a proffer, not in this case --

1           THE COURT:  By the way, on this motion, I'm not going

2    to have everybody back.  It's going to only be the attorneys

3    and the clients that are involved in the motion with respect to

4    the DNA only.  So, if you're not one of them, you don't need to

5    worry about this hearing, unless you want to come and watch.

6           MR. ZWAIG:  What time is that, Your Honor?

7           THE COURT:  December 22nd, you indicated afternoon?

8           MS. JOHNSTON:  Your Honor, if I can interrupt for a

9    second.  December 22nd is a Grand Jury day here.

10          THE COURT:  Oh.

11          MS. JOHNSTON:  And so Ms. Greenberg and I will not be

12   available the afternoon of December 22nd.  It's just, the whole

13   day is a bad day.

14          THE COURT:  All right.  How about December 23rd?

15          MS. JOHNSTON:  December 23rd works for us.

16          MR. ZWAIG:  Fine.

17          MR. MONTEMARANO:  The afternoon of the 21st, I might

18   be able to make it.  It depends on the scheduling of Howard

19   County Circuit Court.

20          THE COURT:  I thought you couldn't do it.  Okay.

21   Afternoon of the 21st?

22          MR. GORMAN:  I'm not available that day, Your Honor.

23   I would be available the other time.

24          THE COURT:  All right.  Then I'm back on

25   December 23rd, in the morning.

1          MR. ZWAIG:  Yes, sir.

2          MS. JOHNSTON:  That's fine.

3          THE COURT:  No objection?

4          MR. MONTEMARANO:  9:30?

5          THE COURT:  December 23, 9:30 sound good?

6          MR. ZWAIG:  Yes, Your Honor.

7          THE COURT:  9:30.  That will be a hearing on just

8    that motion.  Well, it will include the one on the handwriting,

9    if it's not consented to.

10          MR. MONTEMARANO:  I suspect it won't, Your Honor.

11          THE COURT:  Now, I don't think I have any other

12   already filed pretrial motions that I have not covered in one

13   form or another, by either saying they will be referred to a

14   magistrate judge or that I have asked the Government to give me

15   an order denying them.

16          Am I missing something?  Please save me from

17   oversight, if you can.  All right.

18          Now, because it's not possible for me to know at this

19   time how many of you are going to be filing motions and how

20   many of these motions will affect your clients and how many

21   will involve testimony, I need to sort of put some dates down

22   for hearings on these to be filed motions that will have enough

23   capacity for this courtroom to be used for every single

24   defendant, if they're entitled to be here, and so I need to set

25   some hearing dates, a date, at least one date for a hearing on

pending motions and status conference, which would also give me

a better chance to hopefully address perhaps finally the

question of severance in the spring.  And you've got last memos

coming in on March 21, so I need to look at something in April

and set aside a day.

Let me see.  Now, I'm looking at the week of

April 5th, but I notice that that's spring break for the school

system in at least Montgomery County, if not other counties, so

I will probably get a parade, a chorus of boos if I try to set

something that week because of people going on vacation.  So,

let me go to the next week.

MS. JOHNSTON:  Your Honor, both Ms. Greenberg and I

are in trial that next week.

THE COURT:  Which one, the 11th?

MS. JOHNSTON:  The week of April 12th, April 11th.

THE COURT:  That week or beyond?

MS. JOHNSTON:  Two weeks, through the week of 19th.

THE COURT:  Okay.  You're free the week of the 26th?

MS. JOHNSTON:  Yes, Your Honor.

THE COURT:  I'm sorry.  I got the wrong date.

MS. JOHNSTON:  April 26th or April 25th would be the

Monday.

THE COURT:  25th.

MR. SAUNDERS:  For the record, Thomas Saunders.  I'll

be in Argentina all that week.

1          THE COURT:  Argentian!

2          MR. SAUNDERS:  Yes, Your Honor.

3          THE COURT:  I went to Argentina this year.  It's a

4    really nice place.  Talk to Ricardo Zwaig about it.  He'll give

5    you all the information you need.  How long will you be in

6    Argentian?

7          MR. SAUNDERS:  I leave on Saturday, the 23rd, and I

8    return on the 6th of May.

9          THE COURT:  Okay.  Well, let's go back and see if

10   there is anything earlier in April that will work.  Ms.

11   Johnston, did you say the 18th you're in trial?

12         MS. JOHNSTON:  We are in trial that week.  I start a

13   trail on March 22nd.  Ms. Greenberg is in trial the week of

14   April 11th and the week of April 18th, so she'll be sitting in

15   trial on those Mondays.  I, of course --

16         THE COURT:  Trial is going to sit on Mondays?

17         MS. JOHNSTON:  They're in Baltimore.

18         THE COURT:  In Baltimore.  Okay.

19         MS. JOHNSTON:  So she'll be in trial the weeks of

20   April 11th and April 18th.

21         THE COURT:  All right.  And then the 25th messes up

22   the Argentina trip.  Okay.

23         MR. MARTIN:  Your Honor, Anthony Martin on behalf of

24   Learley Goodwin.  On the 11th I start a trial in the Federal

25   Court in D.C. in front of Judge Kotelly.

1          THE COURT:  Eleventh of what?

2          MR. MARTIN:  April.

3          THE COURT:  April.  How long?

4          MR. MARTIN:  The Government says six weeks.

5          MR. ZWAIG:  Excuse me, Your Honor.  I also have a

6     trial on April 11th, as I mentioned earlier, in Howard County,

7     murder trial.

8          THE COURT:  Is the Court going to sit every single

9     day of the week in your trial in D.C.?

10          MR. MARTIN:  I don't know the answer to that yet,

11     Your Honor.  I know that some judges usually set one day aside

12     and Judge Kotelly hasn't actually given us an order, a

13     procedural order yet, so I don't know the answer to that.  I

14     would presume, the way it looks now, that it's going to be

15     every day.

16          THE COURT:  Okay.  Counsel.

17          MR. McKNETT:  Harry McKnett on behalf of Ms. Lenora

18     Ali-Gardner.  Your Honor, I'm starting a 12 week trial with

19     Judge Williams on March 8th.  It's my understanding that he

20     will not be sitting on Mondays.

21          THE COURT:  He should not be sitting on Mondays.

22          MR. McKNETT:  Excuse me, Your Honor?

23          THE COURT:  He would ordinarily not sit on Mondays.

24          MR. McKNETT:  That trial will run through May, but I

25     should be available any Monday during that time period.

1    MR. HALL:  Your Honor, if I may, Marc Hall

2    representing Reece Whiting.  I am also a codefendant in the

3    case just indicated with Judge Williams, so my only

4    availability for that three month period will be on Mondays.

5    MS. JOHNSTON:  Your Honor, could I suggest May 16th,

6    Your Honor.

7    THE COURT:  Let me take a look.  It looks like May

8    16th will work.

9    MR. SAUNDERS:  Your Honor, I start an eigh week

10   federal trail May 16th in Baltimore.

11   MR. MONTEMARANO:  I will be flying wingman with

12   Mr. Saunders, Your Honor.

13   THE COURT:  Well --

14   MS. JOHNSTON:  How about Friday, May 20th, Your

15   Honor?

16   MR. MONTEMARANO:  Your Honor, that's the first week

17   of trial.  Judge Davis may be able to release Mr. Saunders and

18   I.  We may be able to, because it's a long trial, he may be

19   able to give us a day, and we'd be glad to approach Judge Davis

20   about that possibility.

21   THE COURT:  I can approach him too.

22   MR. MONTEMARANO:  Sure, if you like, Your Honor.

23   MS. JOHNSTON:  Or, for that matter, Your Honor,

24   Friday the 3th.  I don't know what the Court's trial schedule

25   is so, if we have to accommodate Baltimore trials.

1          THE COURT:  May 13th is open.  Is May 13th better?

2          MR. MARTIN:  Your Honor, again, I would ask that you

3  move that to the 20th.  I think that's a better date for me.

4          THE COURT:  All right.  Well, then --

5          MR. MARTIN:  Or for Judge Kotelly.  I'm sorry.

6          MR. BRENNAN:  Excuse me, Your Honor.  William Brennan

7  on behalf of Mr. Mangual, Your Honor.  I start a trial in this

8  court.  I'm free on Mondays in April and May, but not on

9  Fridays.

10          THE COURT:  When does your trial begin?

11          MR. BRENNAN:  It begins April 26th, Your Honor.

12          THE COURT:  And how long is it?

13          MR. BRENNAN:  Four weeks, but I'm free on Mondays

14  starting from that date.

15          THE COURT:  Somehow I think I would prefer to

16  negotiate the Treaty of Paris.

17          MS. JOHNSTON:  Well, there is Monday, May 23rd, Your

18  Honor, but I think that's going to interfere with the Baltimore

19  trial folks.

20          THE COURT:  Well, let me ask you this, if we go back

21  much earlier, is that going to help?  Beause I'm really anxious

22  to get as many motions as I can resolved.  If we start looking

23  at the papers that have come in rapidly, I've got -- What about

24  March 28th?  I don't hear anything.  Good.  You've just bought

25  a nice March 28th hearing at 9:30, and that will be, I'm going

1    to assume now, it may be a wrong assumption, that that will be

2    a motion that potentially has testimony and every single

3    defendant is entitled to be there.  So, we may have another

4    reunion like this on that date, so engrave that on your

5    calendar.

6             MR. MONTEMARANO:  Your Honor, I didn't have Mr.

7    Ticknor's calendar with me, Your Honor.  I don't think he

8    understood that we were going to be doing the scheduling here

9    today.  So to that extent --

10            THE COURT:  When we're together you're always in

11   danger of me setting more hearings.

12            MR. MONTEMARANO:  Your Honor, I'm just saying, I'm

13   not agreeing or disagreeing with regard to Mr. Ticknor, but I

14   will inform him of it today in writing.

15            THE COURT:  That's the risk Mr. Ticknor's going to

16   have to take.  But I think we can start looking at these papers

17   when they come in and the week after the reply.  I think we can

18   get it all done.  My law clerk has not passed out yet, so I

19   think we can do that.

20            Now, Judge Day is going to come on the bench here

21   shortly, so counsel are all requested to remain.  He may be

22   delayed a little bit because he's sitting in for me doing

23   attorney admissions, which are at 10:00.  But unless the

24   attorney admissions take a long, long time, he should be here

25   in a very short while.  Yes, sir.

1    MR. ROBBINS:  Good morning, Your Honor.  G. Arthur

2    Robbins.  I'm going to reveal my ignorance.  Is there a reason,

3    if we know for a fact that there's another superseding

4    indictment coming, we couldn't waive arraignment en mass of

5    this pending indictment, if we have another indictment in about

6    two weeks?

7    THE COURT:  Well, let me leave that up to Judge Day.

8    I don't prefer to do that.  We're going to try to get Judge Day

9    here in just a minute.

10    Now, I've gown down a pretty long list of things

11    here.  I think I've covered everything, but Ms. Johnston, is

12    there anything that the Court should address that we have not

13    addressed yet?

14    MS. JOHNSTON:  I don't believe so.  I'm a little

15    concerned about getting our other trial date set as soon as

16    possible in 2006.

17    THE COURT:  The second group?

18    MS. JOHNSTON:  I think we're going to run into

19    scheduling problem if the Court waits much longer.  If the

20    Court wants to do that when we get together in March, hopefully

21    we'll have enough --

22    THE COURT:  I can set group two right now.

23    MS. JOHNSTON:  That would be --

24    THE COURT:  It's going to be a long way away.

25    MS. JOHNSTON:  Well, Your Honor, I mention that

1  because I know that some of the attorneys have capital cases

2  and other long trials, and I'd like us to get on their

3  calendars before some other judge takes their time.

4  THE COURT: All right. So we've set the first group

5  on November 15th for seven weeks. That's what I've got now.

6  So, we're talking about 2006. I can't believe I'm going to get

7  a lot of people telling me their calendars are already

8  completely overwhelmed in 2006, but ...

9  MS. JOHNSTON: And that's why I would suggest to the

10  Court perhaps setting the second group for six to eight weeks

11  starting January 17th --

12  THE COURT: That's too soon.

13  MS. JOHNSTON: -- of that week.

14  THE COURT: That's too soon. If you start

15  November 15th and you have a break at Christmas and so forth, I

16  don't see how that's going to work. I would prefer to start it

17  in February.

18  MS. JOHNSTON: That's fine, Your Honor. If the Court

19  wants to start on February 6th for that second, the group two

20  group, February 6th of 2006.

21  THE COURT: The 7th, starting on Tuesday. I'm

22  informed Judge Day will be here in about ten minutes. He is

23  just finishing up the bar admissions.

24  MS. JOHNSTON: And that group would be the group two,

25  if the Court adopts our plan, the Mangual group.

1          THE COURT:  All right.

2          MS. JOHNSTON:  Six to eight weeks.

3          THE COURT:  What does February 7, 2006, look like on

4    all these busy lawyers' calendars.

5          MR. SUSSMAN:  Your Honor, if I might.  I'm standing

6    in for Jane Norman, who represents a defendant in group two.

7    She did not give me any dates.  I believe she was told that the

8    Court would not be setting dates for group two.  That may be a

9    mistake on my part, but I don't know her schedule.  I'll just,

10   if the Court's going to set a date, I'll tell her what the date

11   is.

12         THE COURT:  Everybody here should understand, you

13   always take the risk at any hearing in this case, because of

14   the grave difficulties in getting agreement on calendars, that

15   we're always going to be talking about dates every time we're

16   together, so don't assume that any date is not possibly being

17   set, because it's so difficult to get all these dates pinned

18   down.  Yes, sir.

19         MR. RICCO:  Yes, Your Honor.  Anthony Ricco for Ed

20   Barber.  Your Honor, because of the case in the Eastern

21   District, the earliest I would be able to appear for trial in

22   this case would be March 20, 2006, which would be about three

23   weeks after that.

24         THE COURT:  March 20th?

25         MR. RICCO:  March 20th, Your Honor.  That's a Monday

1    morning.

2            THE COURT:  All right.  Anybody have an objection to

3    setting group two tentatively on March 21, 2006?  Okay.

4            MR. MONTEMARANO:  How many weeks, Your Honor?

5            THE COURT:  The estimate in this is also six to eight

6    weeks, right, Ms. Johnston?

7            MS. JOHNSTON:  Yes, Your Honor.

8            THE COURT:  I'll set it for seven weeks.  Now, these

9    estimate of length, I'm going to be talking about them, every

10   time you come in front of me I'm going to ask you is the

11   estimate still the same.  Is it going to go up, is it going to

12   go down, and I'm expecting everyone to keep on looking at that

13   case and evaluating it and deciding whether this case really is

14   a case that long or that short, so that we don't end up with a

15   scheduling disaster by having a case that either is down for

16   eight weeks and ends up being two, or down for six and ends up

17   being 24 or something, because that could really mess the

18   Court's calendar up and it's not good.

19           MS. JOHNSTON:  Could the Court also then reserve some

20   tentative time for the third group.  Your Honor looks at me

21   befuddled, but I am concerned that we're going to get to later

22   this fall and then try to set dates for those groups and

23   everyone is going to be booked and we'll be in 2007 before we

24   know it.

25           I would rather be able to tell a judge in another

1    long case I have that I can't do it because we have the time

2    blocked here.

3            THE COURT:  Well, I can tell you right now, if group

4    three stays as large as it is, it's going to have to be groups

5    3A and 3B.  We are not trying a case that big.

6            MS. JOHNSTON:  I don't anticipate --

7            THE COURT:  I can certainly set a trial date

8    tentatively for group 3 and hope that by attrition it gets down

9    to a manageable size, but if it doesn't, I'm going to break it

10   into two parts.  It just can't be that big a case.

11           MS. JOHNSTON:  I fully understand that, Your Honor.

12   We're hoping that it will be in a manageable size by the time

13   we get there.

14           THE COURT:  Well, that one you're saying is going to

15   take --

16           MS. JOHNSTON:  I would say ten weeks.

17           THE COURT:  Ten weeks.  Oh, boy.

18           MS. JOHNSTON:  Eight to ten weeks.  Perhaps we could

19   start at the beginning of June of 2006.

20           THE COURT:  How many weeks did you say, ten?

21           MS. JOHNSTON:  I initially said ten to 12.  Of

22   course, that would have included the insurance fraud, so I

23   would say eight weeks, nine weeks, maybe for just the drug

24   conspiracy, since the Court is obviously leaning toward

25   severing the insurance.

1          THE COURT:  Okay.  How about June 6, 2006.

2          MR. SAUNDERS:  Your Honor, on behalf of my client,

3    timewise is obviously there.  My client wants me to express

4    that he doesn't agree to it for speedy trial purposes but,

5    obviously, it fits my calendar.

6          THE COURT:  His objection is noted and overruled.

7          MS. AMATO:  Your Honor, on behalf of Ms. Dobie, we

8    would do the same thing.

9          THE COURT:  It's overruled as well.  Now, let's --

10         MR. MARTIN:  We join in that, Your Honor.  Learley

11   Goodwin.

12         THE COURT:  You're all -- I'll stipulate, I'll order,

13   you all join in objevting to that.

14         MR. MONTEMARANO:  Thank you, Your Honor.

15         THE COURT:  Now, June 6, 2006, for groups 3 for how

16   many weeks did you say, eight?

17         MS. JOHNSTON:  Eight, nine weeks.

18         THE COURT:  Nine weeks.

19         MS. JOHNSTON:  That's assuming the Court is severing

20   the insurance fraud, as the Court has indicated.

21         THE COURT:  And that you can assume that I'm -- Well,

22   for now, because I don't know what your superseding indictment

23   is going to look like.

24         MS. JOHNSTON:  And that's fine.

25         THE COURT:  Right now, the way the third superseding

1    indictment looks, it looks like it should be severed, and I can

2    revisit that.

3           MS. JOHNSTON:  That's fine, Your Honor.

4           THE COURT:  How long is the insurance fraud case

5    going to take, in its new and improved version that you're

6    about to give me.

7           MS. JOHNSTON:  Probably three weeks.

8           THE COURT:  Well.  How about September 12, 2006 for

9    the insurance case.  That's a week after Labor Day.  That's

10   three weeks, you said?

11          MS. JOHNSTON:  Yes, Your Honor.

12          THE COURT:  Now, these are all tentative.  I'm

13   putting them on the calendar.  They all are subject to being

14   sliced and diced and modified.  It could even happen in

15   December, I mean, depending on what happens.  You know, every

16   single time we meet, we're going to be discussing whether these

17   dates need to be adjusted or modified, but it looks like the

18   next time that I'm going to have all of you back here is going

19   to be March 28th.  If I'm going to have an earlier hearing on

20   the DNA, but that does not necessarily involve every single

21   defendant.  Mr. Montemarano.

22          MR. MONTEMARANO:  Your Honor, just want to be clear.

23   You would suggest the possibility of 3A and 3B if Ms.

24   Johnston's predictions are not correct and we don't get our 15

25   group three shrunk.

1          THE COURT:  You can count on me not doing a 14 or 15

2    department trial.

3          MR. MONTEMARANO:  Knowing these dates are tentative,

4    I'd assume we would be trying 3B, for the sake of discussion,

5    before the insurance fraud case.  That would be the Court's

6    intention if we don't have --

7          THE COURT:  I don't know yet.  I have to see.  We are

8    really talking about hypotheticals here that I think are pretty

9    highly hypothetical at this point.  But, clearly, if there's a

10   large dose of attrition, that is fine.  If there is not, then

11   the group B might take the insurance fraud date.  I don't know.

12          We will be revisiting this on a regular basis.  But

13   what I'm trying to do is to be faithful to the Federal Rules of

14   Criminal Procedure in terms of rational severance to protect

15   the interests of defendants who have legitimate interests in

16   not having a trial that's so large and so complexion that they

17   get lost in a sea of defendants and counts and a rational jury

18   couldn't resolve the matter fairly.  And I think, assuming a

19   reasonable level of attrition, that setting these three sets of

20   dates now will provide us with some more rational and fair way

21   to try that that's faithful to the Federal Rules and the

22   constitutional rights of the defendants.

23          MR. MONTEMARANO:  Trying to get Mr. Ticknor, but

24   that's all.

25          THE COURT:  Well, he's got a long time to prepare for

trial, then.

MR. MONTEMARANO: Sure.

THE COURT: But, let me see if there's anything else. No. We will be entering an order that embodies the rulings here. The only one I'm waiting for an order on is an order from the Government concerning speedy trial. If you get that to me promptly, I'll probably merge the whole thing together in one great big order to set all these dates.

Any other matters that any counsel have to request of me before I bring Judge Day in? All right. Well, stay right where are you. Don't move. We'll bring Judge Day in.


COURT REPORTER'S CERTIFICATE

-oOo-

I certify that the foregoing is a correct transcript from the record of proceedings in the above matter.


Date:

/s/ _____

Sharon O'Neill